## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____
                                    )
Cbeyond Communications, LLC,        )
                                    )
            Plaintiff,              )
                                    )         Civil Action No.
v.                                  )         1:11-CV-0693-TCB
                                    )
MCI Communications Services Inc.,   )
d/b/a Verizon Business              )
                                    )
            Defendant.              )
_____)

### ANSWER TO COMPLAINT

Defendant MCI Communications Services Inc., d/b/a Verizon Business

Services ("Verizon Business") hereby answers the complaint filed on March 4,

2011, by Cbeyond Communications, LLC ("Cbeyond"), stating as follows:

### First Defense

Cbeyond's claims are barred for failure to state a claim upon which relief

can be granted.

## Second Defense

Verizon Business reserves, upon completion of its investigation and discovery, to file such additional defenses, counterclaims, cross-claims, and additional defendant complaints as may be appropriate.

## Third Defense

As a further defense, and by way of answer, Verizon Business responds to the enumerated paragraphs of the complaint as follows:

## Nature of the Case

1.    Verizon Business admits that Cbeyond's complaint purports to assert a tariff collection action.  Verizon Business admits that it has refused to pay amounts Cbeyond has invoiced to Verizon Business, but denies that it has unlawfully refused to pay any amounts owed to Cbeyond.

2.    Verizon Business admits that it acts as an interexchange carrier ("IXC"), which is also commonly called a long-distance carrier.  Verizon Business further admits that the description of how a typical long-distance call is routed is accurate as applied to a call that is originated and terminated in the legacy "time division multiplexed" or "TDM" format used on the public switched telephone network.  Verizon Business denies that this is an accurate description for communications traffic originated or terminated in Internet Protocol ("IP")

format, which forms the basis of Verizon Business's dispute in this case.  Verizon

Business further admits that Cbeyond acts, in some circumstances, as a local

exchange carrier ("LEC").

3.      Verizon Business admits that federal and state law require payment

of access charges for origination and termination of certain traffic, namely traffic

that is originated and terminated in TDM format, and then only in accordance

with the terms of the invoicing carrier's tariff.  To the extent Cbeyond alleges that

either federal or state law requires payment of access charges for traffic that

originates and/or terminates in IP format, Verizon Business denies all such

allegations.

4.      Verizon Business admits on information and belief that Cbeyond has

(and at all times relevant to this dispute had) a tariff on file with the Federal

Communications Commission ("FCC") setting out its switched access rates for

originating or terminating interstate telecommunications traffic.  Verizon

Business further admits on information and belief that Cbeyond has (and at all

times relevant to this dispute had) tariffs on file with the relevant state regulatory

authorities setting out its switched access rates for originating or terminating

intrastate telecommunications traffic.  Verizon Business denies that these tariffs

apply to traffic originated and/or terminated in IP format.

5.      Verizon Business admits that it has delivered traffic to Cbeyond and received traffic from Cbeyond, and admits that Verizon Business has disputed Cbeyond's attempt to apply Cbeyond's tariffed access charges applicable to TDM traffic to traffic originated and/or terminated in IP format.  Verizon Business denies that it has refused to pay any amounts due to Cbeyond.  Verizon Business further denies that it has "made up" a rate; instead, it has paid Cbeyond a rate that Verizon Business believes is appropriate for the exchange of traffic originated and/or terminated in IP format, while attempting to engage Cbeyond in the negotiation of a commercial agreement to govern the parties' exchange of such traffic.  Verizon Business denies that the amount it has disputed and withheld is currently in excess of $900,000.  Verizon Business further denies that Cbeyond is entitled to recover any alleged underpayments or late fees from Verizon Business.  Further answering, Verizon Business states that Cbeyond is aware of the basis for Verizon Business's dispute, yet Cbeyond has said nothing about traffic originated and/or terminated in IP format in its complaint.

### Parties

6.      On information and belief, Verizon Business admits the allegations in Paragraph 6 of the complaint.

7.      Admitted.

8.     Verizon Business admits that, among other things, it provides interstate and intrastate telecommunications services in Georgia and other states. Verizon Business does not understand the phrase "telecommunications related services" and, on that basis, denies the allegation that it provides such services.

### Jurisdiction and Venue

9.     Verizon Business admits that this Court has subject matter jurisdiction over the action.

10.     Verizon Business admits that this Court is an appropriate forum for this case and that the FCC does not hear tariff collection actions.  However, Verizon Business notes that the FCC has recently issued a Notice of Proposed Rulemaking in which it proposes to promulgate rules in the near term governing the exchange of traffic originated and/or terminated in IP format.  The Court will likely benefit in its resolution of this dispute from any decision the FCC issues in that rulemaking.

11.     Admitted.

12.     Admitted.

**Facts Common to All Claims**

13.    Verizon Business admits, on information and belief, that Cbeyond is authorized to provide services as a LEC, and that it offers such services, in the geographic areas identified in Paragraph 13 of the complaint.  Verizon Business currently lacks sufficient information to form a belief about the truth of the allegation that Cbeyond acts as a LEC in connection with the origination and/or termination of traffic in IP format and, on that basis, denies this allegation in part.  Verizon Business does not understand the phrase "telecommunications related services" and, on that basis, denies the allegation that Cbeyond provides such services.

14.    Verizon Business denies that it has refused to pay any lawful rates due to Cbeyond.  Further answering, Verizon Business states that the present action involves Cbeyond's attempt to apply its tariffed access charges to traffic originated and/or terminated in IP format, despite the fact that the FCC has never held that such charges apply to IP traffic and that at least two federal courts have rejected such claims.

15.    Admitted, as applied to traffic that originates and terminates in TDM format.

16.     Verizon Business admits that an IXC carrying a long-distance call that originates or terminates in TDM format is required to compensate LECs, pursuant to the terms of their tariffs, for use of their networks to originate or terminate call.  Verizon Business denies that such an obligation applies to traffic that is originated and/or terminated in IP format.

17.     Admitted, as applied to traffic that originates and terminates in TDM format.

18.     Admitted, on information and belief, that Cbeyond operates, in part, as a common carrier.  Verizon Business currently lacks sufficient information to form a belief about the truth of the allegation that Cbeyond acts as a common carrier in connection with the origination and/or termination of traffic in IP format and, on that basis, denies this allegation in part.

19.     Verizon Business admits that federal and state law generally require common carriers to provide service in a non-discriminatory manner.  To the extent Paragraph 19 purports to allege anything specific about these obligations or this dispute, Verizon Business cannot determine the substance of those allegations and on that basis denies all such allegations.

20.     Verizon Business admits on information and belief that Cbeyond has (and at all times relevant to this dispute had) a tariff on file with the FCC setting

out its switched access rates for originating or terminating interstate telecommunications traffic.  Verizon Business further admits on information and belief that Cbeyond has (and at all times relevant to this dispute had) tariffs on file with the relevant state regulatory authorities setting out its switched access rates for originating or terminating intrastate telecommunications traffic. Verizon Business denies that these tariffs apply to traffic originated and/or terminated in IP format.  Verizon Business lacks sufficient information to form a belief about the truth of the allegation that Cbeyond has provided telecommunications services at non-discriminatory rates.

21.    Admitted.

22.    Verizon Business admits that tariffed rates apply to the services specified in the tariff, assuming it is a lawful (and not merely a legal) tariff. Verizon Business denies that Cbeyond's tariffs apply to traffic originated and/or terminated in IP format.

23.    Verizon Business admits that a customer under a tariff must pay the tariffed rates that apply to the services specified in the tariff, assuming it is a lawful (and not merely a legal) tariff, and cannot "make up" its own rate to pay. Verizon Business denies that Cbeyond's tariffs apply to traffic originated and/or terminated in IP format.  Verizon Business further denies the implication that it

has "made up" a rate; instead, it has paid Cbeyond a rate that Verizon Business

believes is appropriate for the exchange of traffic originated and/or terminated

in IP format, while attempting to engage Cbeyond in the negotiation of a

commercial agreement to govern the parties' exchange of such traffic.

24.     Denied.

25.     Verizon Business admits on information and belief that Cbeyond has

(and at all times relevant to this dispute had) a tariff on file with the FCC setting

out its switched access rates for originating or terminating interstate

telecommunications traffic.  Verizon Business denies that this tariff applies to

traffic originated and/or terminated in IP format.

26.      Admitted that Section 5.4.2 of Cbeyond's FCC Tariff No. 2, found

on 11th Revised Sheet 74 (issued July 16, 2010 and effective July 17, 2010),

contains the per-minute rates listed in Paragraph 26, which are Cbeyond's rates

for its "Direct Connect" service.

27.     Verizon Business admits on information and belief that Cbeyond has

(and at all times relevant to this dispute had) tariffs on file with the relevant state

regulatory authorities setting out its switched access rates for originating or

terminating intrastate telecommunications traffic.  Verizon Business denies that

these tariffs apply to traffic originated and/or terminated in IP format.

28.     Admitted that Verizon Business has delivered traffic to Cbeyond (or received traffic from Cbeyond) from prior to August 1, 2010 to the present that was originated and/or terminated in IP format.  Verizon Business denies that any of that traffic is intrastate for jurisdictional purposes.  Verizon Business currently lacks sufficient information to form a belief about the truth of the allegation that Cbeyond acted as a LEC in connection with the origination and/or termination of traffic in IP format and, on that basis, denies this allegation in part.

29.     Denied that Verizon Business was required to compensate Cbeyond for the IP-originated and/or IP-terminated traffic at issue in this dispute at the rates set forth in its federal and state switched access tariffs.  Further answering, Verizon Business states that it compensated Cbeyond for the traffic originated and/or terminated in IP format, while attempting to engage Cbeyond in the negotiation of a commercial agreement to govern the parties' exchange of such traffic.

30.     Admitted on information and belief that all of the Cbeyond invoices that are at issue in this dispute contain rates listed in its then effective federal and/or state tariffs.  Denied that Cbeyond is entitled to collect such tariffed rates for traffic originated and/or terminated in IP format.

31.     Admitted that Verizon Business first raised a dispute with respect to Cbeyond's application of its federal and state tariffed switched access rates to traffic originated and/or terminated in IP format in August 2010.  Verizon Business admits that, for at least some time prior to August 2010, Verizon Business paid Cbeyond its tariffed rates for traffic that was originated and/or terminated on Cbeyond's network, including traffic originated and/or terminated in IP format.

32.     Verizon Business admits that a tariff properly filed with the FCC or the relevant state regulatory authority has the force of law, insofar as it is a legal tariff.  Further answering, Verizon Business states that a legal tariff may be found to be unlawful, in which case it does not have the force of law.

33.     Verizon Business admits that a tariff filed with the FCC may be "deemed lawful" pursuant to 47 U.S.C. § 204(a)(3) if it meets the criteria for that status.

34.     Admitted, insofar as the quotation refers to a tariff filed pursuant to 47 U.S.C. § 204(a)(3) and in accordance with the terms of that section.  Denied, as a general statement of communications law; tariffs that are not filed pursuant to 47 U.S.C. § 204(a)(3) and that take effect without prior suspension or investigation are legal, not lawful (deemed or otherwise), tariffs.

35.     Admitted, insofar as the quotation refers to a tariff filed pursuant to 47 U.S.C. § 204(a)(3) and in accordance with the terms of that section.  Denied, as a general statement of communications law; tariffs that are not filed pursuant to 47 U.S.C. § 204(a)(3) and that take effect without prior suspension or investigation are legal, not lawful (deemed or otherwise), tariffs.  A legal tariff may be determined to have been unlawful from the time of its filing.

36.     Admitted.

37.     Admitted.

38.     Verizon Business admits that it has not filed with the FCC an objection, complaint, or other challenge to Cbeyond's federal tariff.

39.     Verizon Business admits that it has not filed with the FCC an objection, complaint, or other challenge to Cbeyond's federal tariff.

40.     Verizon Business admits that it has not filed any challenge to Cbeyond's state tariffs.

41.     Verizon Business admits, on information and belief, that none of Cbeyond's federal or state tariffs have been suspended or otherwise set aside by the relevant authorities.  Verizon Business denies that those tariffs apply to the services at issue here:  namely, the exchange of traffic originated and/or terminated in IP-format.

42.     Cbeyond has not alleged sufficient facts to demonstrate that any of
its federal tariffs were filed pursuant to 47 U.S.C. § 204(a)(3) and Verizon
Business lacks sufficient information to form a belief about the truth of the
allegation that any or all of those tariffs were filed pursuant to 47 U.S.C.
§ 204(a)(3), such that they could be "deemed lawful."  Further answering,
Verizon Business states that the rates listed in Paragraph 26 are not deemed
lawful, because Cbeyond filed those rates on one day's notice, not the fifteen
days' notice required under 47 U.S.C. § 204(a)(3) for a tariff that increases rates to
be "deemed lawful."  Cbeyond has not alleged the existence of any state statute
analogous to 47 U.S.C. § 204(a)(3), pursuant to which a tariff filed with a state
commission could be "deemed lawful"; nor has Cbeyond alleged that, in filing its
various state tariffs, it has complied with the terms of such state statutes.
Verizon Business therefore lacks sufficient information to form a belief about the
truth of the allegation that any or all of Cbeyond's state tariffs are "deemed
lawful."  Verizon Business denies that the federal and state tariffs Cbeyond has
filed apply to the services at issue here:  namely, the exchange of traffic
originated and/or terminated in IP-format.

43.     Verizon Business admits that, in August 2010, it notified Cbeyond
that Verizon Business would not pay federal or state tariffed switched access

charges for traffic that Verizon Business exchanges with Cbeyond, which

originates and/or terminates in IP format.  Further answering, Verizon Business

states that it informed Cbeyond of the basis of its dispute.

44.    Verizon Business admits that, in August 2010, it began to

compensate Cbeyond at a commercially reasonable rate of $0.0007 per minute for

traffic that it exchanges with Cbeyond that originates and/or terminates in IP

format.  Further answering, Verizon Business states that it sought to negotiate a

commercial agreement with Cbeyond to govern the exchange of such traffic;

Verizon Business has successfully negotiated such an agreement with

Bandwidth.com for the exchange of traffic originated and/or terminated in IP

format at a rate of $0.0007 per minute.

45.    Verizon Business admits that, since August 2010, it has refused to

pay tariffed switched access charges for traffic that it exchanges with Cbeyond

that originates and/or terminates in IP format, on the ground that access charges

do not apply to that traffic.

46.    Verizon Business denies that the amount it has disputed and

withheld is currently in excess of $900,000.  Verizon Business denies that any

disputed amounts are due to Cbeyond.

47.     Verizon Business admits that LECs are generally not permitted to block or refuse to accept terminating traffic from an IXC and that Cbeyond continues to receive traffic from Verizon Business.  Verizon Business denies that it has refused to pay Cbeyond in accordance with an applicable tariff.

48.     Verizon Business admits that Cbeyond is generally obligated to terminate the traffic Verizon Business delivers to Cbeyond.  Verizon Business denies the remaining allegations in this paragraph for the reasons set forth in prior paragraphs.

49.     Verizon Business admits that the total amount it has disputed and withheld continues to increase, but denies that it has refused to pay any amounts due to Cbeyond under its federal and state tariffs.

50.     Denied.

**Count I:  Collection Action Pursuant to Tariff Filed with FCC**

51.    Verizon Business incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

52.    Verizon Business admits, on information and belief, that Cbeyond has filed a tariff with the FCC that purports to set forth, among other things, switched access charges for interstate long-distance calls that originate or terminate on Cbeyond's network.  Further answering, Verizon Business states that the tariff applies only to calls that originate and terminate in TDM format.

53.    Verizon Business denies that it is required to pay tariffed switched access charges for traffic that it exchanges with Cbeyond that originates and/or terminates in IP format.

54.    Verizon Business admits that it has exchanged traffic with Cbeyond that originated and/or terminated in IP format and that such traffic is jurisdictionally interstate.

55.    Verizon Business admits that Cbeyond has invoiced Verizon Business at its tariffed switched access rates.  Verizon Business denies that those tariffed rates apply to the traffic in dispute here.

56.    Verizon Business admits that it has refused to pay tariffed switched access charges for the traffic at issue in this dispute, on the ground that such charges do not apply to the traffic at issue, which originated and/or terminated in IP format.

57.    Verizon Business denies that it is liable to Cbeyond for any alleged underpayments or late fees.

58.    Verizon Business denies that Cbeyond has suffered any recoverable damages.

### Count II:  Collection Action Pursuant to State Tariffs

59.    Verizon Business incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

60.    Verizon Business admits, on information and belief, that Cbeyond has filed tariffs in the states identified in Paragraph 60 of the complaint.  Verizon Business admits, on information and belief, that these tariffs purport to set forth, among other things, switched access charges for intrastate long-distance calls that originate or terminate on Cbeyond's network.  Further answering, Verizon Business states that the tariffs apply only to calls that originate and terminate in TDM format.

61.     Verizon Business denies that any of the traffic in dispute here is jurisdictionally intrastate.  Verizon Business further denies that it is required to pay tariffed switched access charges for traffic exchanged with Cbeyond that originated and/or terminated in IP format.

62.     Verizon Business admits that it has exchanged traffic with Cbeyond that originated and/or terminated in IP format.  Verizon Business denies that such traffic is jurisdictionally intrastate.

63.     Verizon Business admits that Cbeyond has invoiced Verizon Business at its tariffed switched access rates.  Verizon Business denies that those tariffed rates apply to the traffic in dispute here.

64.     Verizon Business admits that it has refused to pay tariffed switched access charges for the traffic at issue in this dispute, on the ground that such charges do not apply to the traffic at issue, which originated and/or terminated in IP format.

65.     Verizon Business denies that it is liable to Cbeyond for any alleged underpayments or late fees.

66.     Verizon Business denies that Cbeyond has suffered any recoverable damages.

**Count III:  Alternative Claim for Breach of Contract**

67.     Verizon Business incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

68.     Verizon Business admits, on information and belief, that Cbeyond has filed federal and state tariffs that purport to set forth, among other things, switched access charges for long-distance calls that originate or terminate on Cbeyond's network.  Further answering, Verizon Business states that the tariffs apply only to calls that originate and terminate in TDM format.

69.     Admitted, on information and belief, that the tariffs Cbeyond has filed are legal tariffs.  Denied that the tariffs create binding contracts or that Cbeyond can recover on a breach of contract claim.

70.     Admitted on information and belief that all of the Cbeyond invoices that are at issue in this dispute contain rates listed in its then effective federal and/or state tariffs.  Denied that Cbeyond is entitled to collect such tariffed rates for traffic originated and/or terminated in IP format.

71.     Verizon Business admits that it has refused to pay tariffed switched access charges for traffic exchanged with Cbeyond that originated and/or terminated in IP format.  Further answering, Verizon Business states that it has paid Cbeyond a rate that Verizon Business believes is appropriate for the exchange of traffic originated and/or terminated in IP format, while attempting

to engage Cbeyond in the negotiation of a commercial agreement to govern the parties' exchange of such traffic.

72.     Denied.

73.     Verizon Business denies that Cbeyond has suffered any recoverable damages.

### Count IV:  Alternative Claim for Breach of Implied Contract

74.     Verizon Business incorporates by reference its responses to the foregoing paragraphs as if fully set forth herein.

75.     Denied.

76.     Denied.

77.     Verizon Business denies the allegations in Paragraph 77 of the complaint and further denies that Cbeyond has suffered any recoverable damages.

### Response to All Paragraphs of the Complaint

Verizon Business denies each and every allegation in Cbeyond's complaint, except as expressly admitted or otherwise stated above.

### Response to Cbeyond's Prayer for Relief

Verizon Business denies that Cbeyond is entitled to any of the relief set forth in its prayer for relief, or any other relief, from Verizon Business.

WHEREFORE, Verizon Business respectfully prays:

(a)     that Cbeyond's complaint be dismissed with prejudice;

(b)     that judgment be entered in favor of Verizon Business and against Cbeyond on all Counts of the complaint;

(c)     that Verizon Business be awarded its costs incurred herein; and

(d)     that Verizon Business be awarded such other and further relief as is justified by the facts and the law and as this Court deems just and proper.

[*Signature of Counsel Appears on the Following Page*]

Respectfully submitted this 28th day of March, 2011, by:

ARNALL GOLDEN GREGORY LLP

/s/ Edward A. Marshall
Darryl S. Laddin
Georgia Bar No. 460793
Edward A. Marshall
Georgia Bar No. 471533

171 17th Street, N.W.
Suite 2100
Atlanta, Georgia 30363
(404)873-8500 (telephone)
(404)873-8501 (facsimile)

Of Counsel:

Scott H. Angstreich
Melanie L. Bostwick
KELLOGG, HUBER, HANSEN, TODD,
   EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W.
Suite 400
Washington, D.C. 20036
(202) 326-7900 (telephone)
(202) 326-7999 (facsimile)

*Pro Hac Vice Application Forthcoming*

## CERTIFICATE OF COMPLIANCE

The undersigned attorney hereby certifies, pursuant to L.R. 7.1, NDGa., that the foregoing ANSWER TO COMPLAINT was prepared in accordance with L.R. 5.1, NDGa. using Book Antiqua font, 13 point.

/s/ Edward A. Marshall
Edward A. Marshall
Georgia Bar No. 471533

## CERTIFICATE OF SERVICE

A copy of the foregoing ANSWER TO COMPLAINT was filed with the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This 28th day of March, 2011.

/s/ Edward A. Marshall
Edward A. Marshall
Georgia Bar No. 471533